# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, as subrogee of Allen and Traci Henderson,**<br><br>    **Plaintiff,**<br><br>**v.**<br><br>**ELECTROLUX HOME PRODUCTS, INC.,**<br><br>    **Defendant.** | **Case No.: 1:16-cv-02079-ACA** |

## MEMORANDUM OPINION AND ORDER

This is a products liability case arising out of a dryer fire at the home of Alan and Traci Henderson. Plaintiff Allstate Vehicle & Property Insurance Company ("Allstate"), as subrogee of the Hendersons, claims that Defendant Electrolux Home Products, Inc. ("Electrolux") negligently designed, manufactured, and sold the subject dryer. Allstate asserts claims under the Alabama Extended Manufacturers Liability Doctrine ("AEMLD") and for negligence.

Pending before the court is Electrolux's motion for partial summary judgment. (Doc. 36). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Electrolux seeks judgment as a matter of law on Allstate's AEMLD and negligence

claims, to the extent the claims allege a failure to warn. For the reasons explained below, the court **GRANTS** the motion.

I. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A "material fact" is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To demonstrate that there is a genuine dispute as to a material fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A); *see Anderson*, 477 U.S. at 252 ("[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.").

The court views the evidence in the light most favorable to the non-moving party. *Baas v. Fewless*, 886 F.3d 1088, 1091 (11th Cir. 2018). The court "may not weigh conflicting evidence or make credibility determinations of its own." *FindWhat Inv'r Grp.*, 658 F.3d at 1307. "If the record presents disputed issues of fact, the court may not decide them; rather, it must deny the motion and proceed to trial." *Id.*

## II.  FACTUAL BACKGROUND

In July 2007, Plaintiff Allstate's subrogors, Allen and Traci Henderson purchased a new electric clothes dryer manufactured by Defendant Electrolux. (Doc. 36-3 at 17; Doc. 36-4 at 16). Between 2007 and 2014, Mr. Henderson personally installed the dryer at three different residences, the last of which was a home located on Mudd Street in Lincoln, Alabama ("Mudd Street Residence"). (Doc. 36-3 at 17-18, 38).

Installation and operation manuals accompanying the dryer contained fire warnings as did the dryer itself. For example, the dryer's Installation Instructions state: "***If the dryer is not exhausted outdoors, some fine lint will be expelled into the laundry area***. An accumulation of lint in any area of the home can create a health and fire hazard. ***The dryer MUST be exhausted to the outside of the dwelling!***" (Doc. 36-6 at 7) (emphasis in original). The Installation Instructions also state:

> ***Do not screen the exhaust ends of the vent system, nor use any screws or rivets to assemble the exhaust system.*** Lint can become caught in the screen, on the screws or rivets, clogging the duct work and creating a fire hazard as well as increased drying times. Use an approved vent hood to terminate the duct outdoors, and seal all joints with duct tape.

(Doc. 36-6 at 7) (emphasis in original). The Installation Instructions go on to provide: "The exhaust system should be inspected and cleaned a minimum of ***every 18 months*** with normal usage. The more the dryer is used, the more often you should check the exhaust system and vent hood for proper operation." (Doc. 36-6 at 7) (emphasis in original).

The dryer's Use & Care Guide states:

> Prevent Fire … Clean the lint screen before or after each load. The interior of the dryer, lint screen housing and exhaust duct should be cleaned approximately every 18 months by qualified service personnel. An excessive amount of lint build-up in these areas could result in inefficient drying and possible fire. . . . Failure to comply with these warnings could result in fire, explosion, serious bodily injury and/or damage to the rubber or plastic parts of the dryer.

(Doc. 36-6 at 21).

A warning label affixed to the dryer states: "**CAUTION - Risk of Fire** A clothes dryer produces combustible lint. The dryer must be connected to an exhaust to the outdoors. Regularly inspect the outdoor exhaust opening and remove any accumulation of lint around the outdoor exhaust opening and in the surrounding area." (Doc. 36-6 at 17) (emphasis in original).

4

The Hendersons received but did not read the Installation Instructions or the Use & Care Guide, and the Hendersons do not recall reading the on-product warnings located on the dryer. (Doc. 36-3 at 17, 21, 37; Doc. 36-4 at 16, 21-22). Mr. Henderson testified that he did not need to consult the Installation Instructions to know how to install the dryer or to read the operating manual to understand how to operate the dryer. (Doc. 36-3 at 39).

Sometime in 2013 or early 2014, Mr. Henderson essentially gutted and rebuilt the Mudd Street Residence himself, including the electrical and plumbing systems. (*See* Doc. 36-3 at 6-7, 10; Doc. 36-4 at 8). At the Mudd Street Residence, Mr. Henderson vented the dryer with a flexible metal transition duct, which he routed through the floor behind the dryer into a crawl space under the residence. (Doc. 36-3 at 19; Doc. 36-5 at 7-8). The dryer did not exhaust outside of the residence, and Mr. Henderson did not install a vent hood at the end of the exhaust system. (Doc. 36-3 at 20; Doc. 36-5 at 9). When he installed the dryer at the Mudd Street Residence, Mr. Henderson removed the existing plug from the end of the dryer's power cord and spliced it to connect directly to the residence's breaker box using a wire nut. (Doc. 36-4 at 14-15; Doc. 36-5 at 35). The failure to exhaust the dryer outside of the residence, the lack of a vent hood, and the splicing of the building wiring to the power cord do not comply with the dryer's Installation Instructions. (*See* Doc. 36-6 at 7, 13).

5

The Hendersons did not clean the interior cabinet of the dryer or the dryer's exhaust system, nor did they hire a professional to do so. (Doc. 36-3 at 20; Doc. 36-4 at 18). The failure to clean the interior of the dryer or its exhaust system does not comply with the dryer's Installation Instructions and Use & Care Guide. (*See* Doc. 36-6 at 8, 21).

On December 30, 2014 the dryer caught fire and damaged the Hendersons' Mudd Street Residence. (Doc. 36-3 at 5). At the time of the fire, the Hendersons' property was insured by a homeowners policy issued by Allstate. (Doc. 36-3 at 28). Pursuant to the policy, Allstate paid the Hendersons $170,927.61 related to the loss. (Doc. 36-2 at 6).

Allstate, as subrogee of the Hendersons, filed this lawsuit against Electrolux alleging that the fire that damaged the Hendersons' Mudd Street Residence was caused by defects in the dryer that Electrolux manufactured. Allstate asserts claims under the AEMLD (Count I) and for negligence (Count II). (Doc. 1).[1]

## III. DISCUSSION

Electrolux claims that it is entitled to partial summary judgment on Allstate's failure to warn claims because, as a matter of law, Allstate cannot prove the failure to warn proximately caused the fire. Electrolux contends that Allstate

---

[1] As a subrogee, Allstate "steps into the shoes" of its subrogors, the Hendersons, and Allstate's claims are derivative of any claims the Hendersons could have asserted. *See Ex parte Webber*, 157 So. 3d 887, 896-97 (Ala. 2014).

6

cannot show proximate cause because the Hendersons did not read the product literature or the on-product labels accompanying the dryer. Electrolux's argument is persuasive.

Under Alabama law, a plaintiff may allege failure to warn as a matter of negligence, under the AEMLD, or both. *Turner v. Westhampton Court, L.L.C.*, 903 So. 2d 82, 90 (Ala. 2004). "As with an AEMLD claim, '[t]he element of proximate cause is essential to the plaintiff's *prima facie* case of negligent failure to adequately warn.'" *Bodie v. Purdue Pharma Co.*, 236 F. App'x. 511, 518 (11th Cir. 2007) (quoting *Gurley v. Am. Honda Motor Co., Inc.*, 505 So. 2d 358, 361 (Ala. 1987) (alteration in *Bodie*). "Under both the AEMLD and the negligence theories, [the plaintiff] has the burden of proving proximate causation. *Clarke Industries, Inc. v. Home Indem. Co.*, 591 So. 2d 458, 461 (Ala. 1991). To demonstrate proximate cause, a plaintiff must show "that the allegedly inadequate warning would have been read and heeded and that it would have prevented the accident." *Sears, Roebuck & Co. v. Harris*, 630 So. 2d 1018, 1030 (Ala. 1993). "[A] plaintiff who does not read an allegedly inadequate warning cannot maintain a negligent-failure-to-adequately-warn action unless the nature of the alleged inadequacy is such that it prevents him from reading it." *E.R. Squibb & Sons, Inc. v. Cox*, 477 So. 2d 963, 971 (Ala. 1985).

Allstate concedes that the record is undisputed that the Hendersons "did not read the product literature and could not remember if they read the on-product labels." (Doc. 38 at 11) (citing Doc. 36-3 at 17, 21, 36-37; Doc. 36-4 at 21-22). Nevertheless, Allstate maintains that it "has a valid failure to warn claim and sufficient evidence of proximate cause to present the claim to the jury based on [Electrolux's] failure to place a conspicuous warning on the product that adequately warned the user of the danger and instructed the user on the steps necessary to avoid the danger." (Doc. 38 at 12). Citing *Carruth v. Pittway Corporation*, 643 So. 2d 1340 (Ala. 1994) and *Rodgers v. Shaver Manufacturing Company, Incorporated*, 993 F. Supp. 1428 (1998), Allstate contends that questions of fact preclude summary judgment on proximate cause because: (1) reliance on warnings and instructions in product literature—as opposed to on-product warnings—is unreasonable and deprived the Hendersons of critical safety information necessary to avoid the fire and (2) although the dryer had on-product labels, the location of the labels are not designed to grab a consumer's attention, and none warned the Hendersons of the specific fire hazard at issue or the steps necessary to prevent those types of fires. (Doc. 10 at 10-12).

Both *Carruth* and *Rodgers* are distinguishable from this case. In *Carruth*, plaintiffs sued a smoke detector manufacturer for failure to warn about "dead air space" after a fatal fire. 643 So. 2d at 1344-45. The defendant argued it

adequately warned about dead air space in a pamphlet that accompanied the product. *Id.* at 1341. The plaintiff testified the he did not read the pamphlet "in depth" before installing the smoke detector, and he was "unaware of information about locating the detector in dead air space, even after casually scanning the pamphlet and observing information on the box the detector came in regarding where to locate the detector." *Id.* at 1345.

The *Carruth* court concluded that "one could reasonably infer that [defendant] conveyed important cautionary information about dead-air-space concerns in a way not calculated to attract the user's attention. . . . Most particularly from the pamphlet's format and print size, and the seemingly sufficient diagram on the box, a fair-minded person could reasonably infer that a user would be induced to only scan the pamphlet and thereby not get from the pamphlet the information about dead-air-space." *Id.* at 1346. Accordingly, it was "a jury question as to whether the . . . pamphlet provided a legally adequate warning about dead-air-space concerns." *Id.*

*Carruth* is not persuasive under the circumstances of this case. Unlike the plaintiff in *Carruth*, the Hendersons did not "casually scan" any of the warnings that accompanied the dryer; they did not read any of the dryer's warnings. Also unlike the plaintiff in *Carruth*, Allstate does not challenge the adequacy of the wording, format, or font of the dryer warnings. Notably, Allstate does not even

9

argue as an affirmative claim that the "specific content of Electrolux's warnings themselves are inadequate as written." (Doc. 38 at 13). Therefore, the facts of *Carruth* are not analogous to the facts here.

The same is true for *Rodgers*. In *Rodgers*, the plaintiff alleged that a post-hole digger manufacturer failed to adequately warn of the dangers of the digger because the warning decal was placed on a part of the digger that moved while the machine was in use. *Rodgers*, 993 F. Supp. at 1438. A federal district court, applying substantive Alabama law, concluded that the plaintiff created a question of fact as to whether the manufacturer breached its duty to provide an adequate warning "by failing to place a warning, in a clearly visible location, identifying the hazard of the entanglement in the rotating components and the precautions to be taken to avoid the hazard." *Id.*

Unlike the plaintiff in *Rodgers*, Allstate has not argued or presented evidence that the on-product warning on the dryer was not clearly visible. In fact, Ms. Henderson testified that she saw the on-product warnings on the dryer but did not read them. (Doc. 36-4 at 21). Mr. Henderson testified that he does not "recall opening the [dryer] door," but he also testified that he did not need to read the instruction or operating manual to install or operate the dryer. (Doc. 36-3 at 21; Doc. 36-3 at 39). In addition, Ms. Henderson did not read "any of the material that came with the dryer." (Doc. 36-4 at 16). Therefore, Allstate has not demonstrated

that the Hendersons would have read any warning on the dryer itself—regardless of the content.

Allstate offers testimony that Mr. Henderson "assumes" he would have followed a large warning on the dryer itself that advised him not to use flexible foil venting and that Mr. Henderson would not have purchased the dryer if "they had told [him] when [he] bought [the dryer]" that he needed to have the interior of the dryer behind dryer drum cleaned every 18 months. (Doc. 36-3 at 39). However, it is undisputed that the Hendersons did not read the warnings on the dryer itself or in the accompanying product literature. (Doc. 36-3 at 17, 21, 36-37; Doc. 36-4 at 16, 21-22). Therefore, Allstate has not submitted "substantial evidence that the allegedly inadequate warning would have been read and heeded and that it would have prevented the accident." *Harris*, 630 So. 2d at 1030.

Accordingly, Electrolux is entitled to judgment as a matter of law on Allstate's claims, to the extent that they allege a failure to warn. *See e.g., Chase v. Kawasaki Motors Corp., U.S.A.*, 140 F. Supp. 2d 1280, 1287-88 (M.D. Ala. 2001) (defendant entitled to summary judgment "[b]ecause Alabama law bars a plaintiff who does not read an allegedly inadequate warning from maintaining a failure to warn action"); *Green v. Five Star Manufacturing, Inc.*, 2016 WL 1243757, at *11 (N.D. Ala. Mar. 30, 2016) ("If a plaintiff did not read the alleged inadequate warning, there is no evidence from which a reasonable juror could infer the

plaintiff would have read and heeded an adequate warning and, thus, no evidence from which a reasonable juror could infer an adequate warning would have prevented the plaintiff's injury.").

## IV. CONCLUSION

For the reasons explained above, the court **GRANTS** Electrolux's motion for partial summary judgment. (Doc. 36). The court **ENTERS** judgment as a matter of law in favor of Electrolux on Allstate's AEMLD and negligence claims, to the extent those claims allege a failure to warn.

By separate order, the court will set Allstate's remaining claims for trial and provide the parties with pretrial instructions.

**DONE** and **ORDERED** this November 27, 2018.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE